**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:22-cv-22534-SCOLA/GOODMAN**

| | |
|---|---|
| New Vision Unlimited, LLC d/b/a Vision Unlimited., individually and on behalf of all others similarly situated, | **CLASS ACTION** |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| vs. | |
| Optimax Investments, Ltd., Lens.com, Inc., Web Eye Care, Inc. and Contact Lens King, Inc. | |
| *Defendants.* | |

**<u>Opposition to Motion to Dismiss</u>**

**Table of Contents**

I.      Introduction. ..................................................................................................................1

II.     Plaintiff plausibly alleges that Defendants violate the Lanham Act. ...........................1

    A.      Plaintiff plausibly alleges that Defendants' ads are false or misleading. .........................2

        1.      Defendants' alternative interpretation of their ads is unreasonable
and, in any event, cannot possibly justify dismissal. ...............................3

        2.      That the fine print discloses the added fee before checkout does not
render the advertisements true and not misleading. ...............................5

        3.      Advertising deceptively low prices is not industry standard. ...........................7

    B.      Plaintiff plausibly alleges consumer deception. .....................................................8

    C.      Plaintiff plausibly alleges that Defendants' misrepresentations were material. ...........10

        1.      Plaintiff plausibly alleges that Defendants' misrepresentations are
likely to influence purchasing decisions...............................................11

        2.      Defendants' arguments are contrary to pleaded facts and wrong..................13

        3.      Defendants' cases are inapposite. ...................................................16

    D.      Plaintiff plausibly alleges injuries that confer Lanham Act standing. .........................17

        1.      Plaintiff plausibly alleges that it competes with Defendants. .........................18

        2.      Defendants' arguments about Plaintiff's prices turn on disputed facts,
and get those disputed facts wrong. ...................................................19

III.    Conclusion....................................................................................................................20

## Table of Authorities

**Cases**

*ADT LLC v. Teamtronics, Inc.*,
  2015 U.S. Dist. LEXIS 188509 (S.D. Fla. May 18, 2015)..................................................11

*ADT LLC v. Vision Sec., LLC*,
  2014 U.S. Dist. LEXIS 104116 (S.D. Fla. July 30, 2014) ............................................. 8, 11

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
  889 F. Supp. 2d 1304 (M.D. Fla. 2012)...........................................................................9

*Berry v. Budget Rent a Car Sys.*,
  497 F. Supp. 2d 1361 (S.D. Fla. 2007) .............................................................................7

*Casper Sleep, Inc. v. Nectar Brand LLC*,
  2020 U.S. Dist. LEXIS 174740 (S.D.N.Y. Sep. 23, 2020)..................................................7

*Castrol, Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) ..............................................................................................2

*Charbonnet v. Omni Hotels & Resorts*,
  2020 U.S. Dist. LEXIS 236726 (S.D. Cal. Dec. 16, 2020) ..............................................17

*Davidoff & Cie, S.A. v. PLD Int'l Corp.*,
  263 F.3d 1297 (11th Cir. 2001)........................................................................................11

*Ford v. Hotwire, Inc.*,
  2008 U.S. Dist. LEXIS 108584 (S.D. Cal. Feb. 25, 2008) ..............................................17

*FTC v. Fleetcor Techs., Inc.*,
  2022 U.S. Dist. LEXIS 143169 (N.D. Ga. Aug. 9, 2022)..................................................5

*FTC v. Roca Labs, Inc.*,
  345 F. Supp. 3d 1375 (M.D. Fla. 2018)............................................................................5

*Gustavson v. Oxford Hotels & Resorts, LLC*,
  2021 U.S. Dist. LEXIS 162025 (N.D. Ill. Aug. 26, 2021) ..............................................17

*Hall v. Marriott Int'l*,
  2020 U.S. Dist. LEXIS 148467 (S.D. Cal. Aug. 14, 2020) ..............................................17

*Harris v. Las Vegas Sands L.L.C.*,
  2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013)..............................................17

*Hickson Corp. v. N. Crossarm Co.*,
  357 F.3d 1256 (11th Cir. 2004).........................................................................................2

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
  910 F.3d 1186 (11th Cir. 2018).........................................................................................3

*Incarcerated Entm't, LLC v. Warner Bros. Pictures*,
  261 F. Supp. 3d 1220 (M.D. Fla. 2017)..........................................................................17

*Jerome's Furniture Warehouse v. Ashley Furniture Indus.*,
  2021 U.S. Dist. LEXIS 75644 (S.D. Cal. Apr. 19, 2021) ..................................................2

*Kurimski v. Shell Oil Co.,*
  2022 U.S. Dist. LEXIS 136040 (S.D. Fla. June 29, 2022) ................................... 7, 10

*Lemberg Law, LLC v. Egeneration Mktg., Inc.,*
  2020 U.S. Dist. LEXIS 94879 (D. Conn. May 29, 2020) ........................................6

*Madenlian v. Flax USA Inc.,*
  2014 U.S. Dist. LEXIS 181473 (C.D. Cal. Mar. 31, 2014) ......................................6

*Marty v. Anheuser-Busch Cos., LLC,*
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) ....................................................................6

*Merial LLC v. FidoPharm, Inc.,*
  2014 U.S. Dist. LEXIS 199682 (N.D. Ga. Sep. 5, 2014) ......................................12

*Millenium Labs., Inc. v. Universal Oral Fluid Labs., Ltd. Liab. Co.,*
  2012 U.S. Dist. LEXIS 194457 (M.D. Fla. Aug. 2, 2012) .....................................10

*N. Am. Med. Corp. v. Axiom Worldwide Inc.,*
  2007 U.S. Dist. LEXIS 112614 (N.D. Ga. Mar. 29, 2007) ......................................8

*Osmose, Inc. v. Viance, LLC,*
  612 F.3d 1298 (11th Cir. 2010) ..............................................................................2

*Phx. Entm't Partners, LLC v. Aguayo,*
  2016 U.S. Dist. LEXIS 187940 (M.D. Fla. Oct. 23, 2016) ....................................20

*Proeduca Altus, S.A. v. Tech. Trade Grp., Inc.,*
  2021 U.S. Dist. LEXIS 230228 (S.D. Fla. Dec. 1, 2021) .....................................10

*Ray v. Spirit Airlines, Inc.,*
  126 F. Supp. 3d 1332 (S.D. Fla. 2015) ................................................................16

*Regent Grand Mgmt. v. Tr. Hosp. LLC,*
  2018 U.S. Dist. LEXIS 212049 (S.D. Fla. Dec. 14, 2018) ...................................5, 9

*Supplement Ctr., LLC v. Evol Nutrition Assocs.,*
  389 F. Supp. 3d 1281 (N.D. Ga. 2019) ..............................................................2, 11

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,*
  915 F. Supp. 360 (S.D. Fla. 1996) .......................................................................16

*Tocmail Inc. v. Microsoft Corp.,*
  2020 U.S. Dist. LEXIS 253088 (S.D. Fla. Nov. 6, 2020) ...........................4, 11, 17

*Vitamins Online, Inc. v. Dynamic Indus., LLC,*
  2015 U.S. Dist. LEXIS 180368 (N.D. Ga. May 5, 2015) ......................................20

*Vorst v. TBC Retail Grp., Inc.,*
  2012 U.S. Dist. LEXIS 200363 (S.D. Fla. Apr. 11, 2012) ......................................7

*Washington v. Hyatt Hotels Corp,*
  (N.D. Ill. June 9, 2020) .......................................................................................17

*Wound Care Concepts v. Vohra Health Servs., P.A.,*
  2022 U.S. Dist. LEXIS 20919 (S.D. Fla. Jan. 27, 2022) ......................................11

*ZPR Inv. Mgmt. v. SEC,*
  861 F.3d 1239 (11th Cir. 2017) .........................................................................6, 15

## I.      Introduction.

Defendants are four popular online retailers of contact lenses. Defendants run internet ads for contact lenses on Google Shopping and other comparative shopping tools. These ads prominently tout prices for boxes of contact lenses that are much lower than those charged by other retailers. This drives traffic to Defendants' websites.

The prices Defendants advertise, however, are not their true prices. When customers check out, they are charged much more for each box of contact lenses they buy. The difference comes from a per-box "processing fee" that Defendants add to every order.

Defendants conceal the added processing fee in various ways. And because consumers almost always buy multiple boxes of contact lenses at the same time (at a minimum, one box for each eye, and usually, a 6-month or 1-year supply), many do not notice that the "grand total" price displayed at checkout incorporates a hidden fee. Moreover, many who do notice the fee go through with the purchase anyway: by the time the fee is added, they have gone through a lengthy checkout process, inputting their personal information, address, and doctor's information; uploading their prescription; adding a payment method; and so forth. And switching to a different retailer who disclosed its true prices upfront at that point wouldn't save them any money because, after the fees are added, Defendants' prices are roughly comparable to those charged by other retailers. Either way, Defendants' false ads divert sales away from retailers who disclose their real prices upfront, such as Plaintiff. Plaintiff brings this case to stop this deceptive and anticompetitive practice.

## II.     Plaintiff plausibly alleges that Defendants violate the Lanham Act.

To state a false advertising claim under the Lanham Act, Plaintiff must plausibly allege "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant

1

has been -- or is likely to be -- injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Plaintiff does this here.

A.    **Plaintiff plausibly alleges that Defendants' ads are false or misleading.**

The first element can be satisfied by alleging that a defendant's ads are (1) "literally false as a factual matter"; or (2) "literally true or ambiguous" but "implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004). "[T]he test for literal falsity is simple[]; if a defendant's claim is untrue, it must be deemed literally false." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993). "Statements that have an unambiguous meaning, either facially or considered in context, may be classified as literally false." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010). This includes untrue statements about price. *Supplement Ctr., LLC v. Evol Nutrition Assocs.*, 389 F. Supp. 3d 1281, 1288 (N.D. Ga. 2019) (statement that a product "is half the cost of competing products, [but] the difference in cost is not so extreme" found to be literally false); *Jerome's Furniture Warehouse v. Ashley Furniture Indus.*, 2021 U.S. Dist. LEXIS 75644, at *16 (S.D. Cal. Apr. 19, 2021) (false statements about discounts found to be literally false).

Here, the Amended Complaint ("Complaint") alleges that Defendants' ads "state that a particular brand and type of contact lenses can be purchased at a particular price from the Defendants." Am. Compl. (Dkt. 51) ¶28; *see id.* ¶¶24-26 (identifying statements in Defendants' ads), ¶¶37-39 (identifying specific statements made by Defendant Optimax), ¶¶55-57, 72-74, 91-93 (same for other Defendants). It alleges that those statements are unambiguous: to consumers, they mean that "it costs [the advertised price] to purchase each box of [the contact lens brand in question]." *Id.* ¶¶40, 58, 75, 102. And it alleges that those unambiguous statements are untrue—"[c]onsumers cannot buy contact lenses from Defendants at the prices advertised." *Id.* ¶28. In truth, it costs more—roughly twice as much—to purchase each box from Defendants. *Id.* ¶¶47-48 (Optimax's true

price is "almost double" the advertised price), ¶¶63-64, ¶¶78-81, ¶¶94-97 (the true price for other Defendants is much higher than advertised). These well-pleaded facts must be accepted as true and establish that Defendants' prices are literally false. In addition, at a minimum, they sufficiently allege that Defendants' ads are misleading because in context, they lead consumers to believe they will be charged one price for each box of contacts, when in fact they will be charged more. *See Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) (reversing granted motion to dismiss because complaint's allegations "allow the plausible inference that [defendant's] labeling is misleading").

1. **Defendants' alternative interpretation of their ads is unreasonable and, in any event, cannot possibly justify dismissal.**

Defendants assert an alternative interpretation of their ads: that what is being advertised is a special price that applies only to orders for a single box of contact lenses (i.e., a 30- or 90-day supply of contact lenses for just one eye.) Defs. Mot. to Dismiss (Dkt. 56) 7-8. And, Defendants claim, if a consumer places an order for a single box of contacts (i.e., order contacts for just one eye), they honor that advertised price.[1] *Id.* Thus, Defendants argue, their ads are literally true. *Id.* This argument fails on multiple levels.

To begin, Defendants' interpretation is contrary to pleaded facts. The Complaint alleges that "a reasonable consumer would understand Defendants' statements to mean that it costs [the advertised price] to purchase each box of [contacts of that type] from [Defendant]." Am. Compl. ¶¶40, 58, 75 (emphasis added). And it pleads facts supporting this allegation: "This is the ordinary meaning of such statements about price in this context." *Id.* "It is also what honest online retailers (like Plaintiff and class members) mean when they advertise prices." *Id.* These allegations must be accepted as true, and foreclose Defendants' argument at the pleading stage. *See Tocmail Inc. v. Microsoft*

---

[1] Notably, Defendants are careful to use the present tense when discussing this feature of their websites, and make no representation that this was the case prior to the filing of this lawsuit.

*Corp.*, 2020 U.S. Dist. LEXIS 253088, at *14 (S.D. Fla. Nov. 6, 2020) ("on a motion to dismiss, the Court accepts all allegations in the complaint as true. Hence, Defendants' alternate interpretation of the plain text of the statement has no significance to the Court's analysis"); *De Dios Rodriguez v. Olé Mexican Foods*, 2021 U.S. Dist. LEXIS 85725, at *14 (C.D. Cal. Apr. 22, 2021) ("to the extent that the parties disagree on the proper interpretation of the representations … that is a question of fact that is premature at the pleading stage"); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (denying motion to dismiss where defendant asserted an alternative interpretation).

In addition, Defendants' interpretation of their ads is implausible. There is nothing in Defendants' ads that suggests that the advertised price is a special price that applies only to single-box orders. As a general matter, per-item pricing typically stays the same, or sometimes goes down, if you buy multiples of the same item. (For example, at the grocery store, apples cost the same whether you buy one apple or three). And for contact lens purchases in particular, consumers typically buy multiple boxes of contact lenses at the same time—at a minimum, two boxes (one for each eye) and usually, a 6-month or 12-month supply consisting of 4 or 8 boxes. Absent some contrary indication, consumers reasonably expect that if a retailer makes unqualified representations about price, the advertised price will apply to typical orders, and not just to highly unusual orders.

Not only that, but the ads of several Defendants expressly state that the advertised price is a per-box ("/ box") price, i.e., a price that applies for each box however many you buy. For example:



Am. Compl. ¶26; *see, e.g.*, ¶56 (same for Lens.com). And all the Defendants continue to advertise the false per-box price throughout the checkout process, even after multiple boxes are added to the order. *See, e.g.*, Am. Compl. ¶¶43, 61, 78-79, 94. So Defendants' own ads and websites directly

contradict Defendants' interpretation and confirm that the ads are about per-box prices.

Plus, if Defendants' interpretation were plausible, their ads are still misleading because in context, they lead consumers to believe that they will be charged one price for each box of contacts they purchase from Defendants, when in fact they will be charged more. *See* § II.A above. So either way, Plaintiff sufficiently alleges that Defendants' ads are deceptive. *Regent Grand Mgmt. v. Tr. Hosp. LLC*, 2018 U.S. Dist. LEXIS 212049, at *12 (S.D. Fla. Dec. 14, 2018) ("the first element of a false advertising claim under the Lanham Act is satisfied if the advertisement is either literally false or the advertising is literally true, but nonetheless misleading.").

> **2.      That the fine print discloses the added fee before checkout does not render the advertisements true and not misleading.**

Defendants next argue that "because the processing fees Plaintiff complains of are fully disclosed to consumers prior to checkout," their "advertisements are neither false nor misleading." Mot. 8. This argument fails at two levels.

First of all, the disclosures Defendants point to are not part of Defendants' internet ads. Nor are they part of the landing pages consumers see after clicking on the ads, which also advertise the artificially low prices. *See* Am. Compl. ¶¶39, 57, 74, 93. So they cannot possibly render Defendants' ads, or their landing pages, non-deceptive.[2] *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1392 (M.D. Fla. 2018) ("Defendants cannot avoid liability by exclusively advertising that the product costs $480 without any caveats and then burying the conditions of the discount in a separate disclaimer"); *see FTC v. Fleetcor Techs., Inc.*, 2022 U.S. Dist. LEXIS 143169, at *35 (N.D. Ga. Aug. 9, 2022) ("later disclosure cannot cure an earlier misrepresentation"); *ZPR Inv. Mgmt. v. SEC*, 861 F.3d 1239, 1250 (11th Cir. 2017) (deceptive statement actionable despite later disclosure); *Miller v. Travel Guard Grp.,*

---

[2] As explained below, the false statements on the ads and initial landing pages divert sales away from Plaintiff and the class and to Defendant *even among consumers who eventually learn the truth. See* §II.C.1 below. So these ads are actionable Lanham Act violations regardless of whether the disclosures on later pages render those later pages non-deceptive.

*Inc.*, 2022 U.S. Dist. LEXIS 124047, at *5-6 (N.D. Cal. July 13, 2022) ("plausible that a reasonable consumer would be misled" by initial offer even when information was later disclosed).

In addition, as the Complaint alleges, because the processing fee disclosures are at best inconspicuous, and at worst downright hidden, many consumers do not notice them, even on the later pages. Am. Compl. ¶34 ("Many consumers do not notice that a 'processing fee' is being added to their order"); *see, e.g., id.* at ¶¶50, 67-68, 80-84, 102 (pleading detailed supporting facts). "Others mistakenly believe that all contact lens retailers charge similar 'processing fees,' and so they are still getting the best deal possible." *Id.* ¶34; *see id.* at ¶¶51, 69, 84-85, 102-103. So even for the later pages that disclose the additional fees, there is a factual dispute as to whether the disclosure is sufficient. That dispute cannot be resolved in Defendants' favor on the pleadings. *See, e.g., Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1341 (S.D. Fla. 2014) (rejecting motion to dismiss that truthful disclaimer was sufficient to dispel deception).[3]

Defendants assert that courts "routinely reject" claims "premised on analogous theories of allegedly 'hidden fees' … where those fees are disclosed before the customer pays." Mot. 9. The "theories" that the cited cases reject, however, are not analogous to the one here.

In *Kurimski*, the plaintiff claimed that Defendants' exterior signage misled them about the price of gas bought with a debit card. *Kurimski v. Shell Oil Co.*, 2022 U.S. Dist. LEXIS 136040, at *3 (S.D. Fla. June 29, 2022). But the exterior signage was silent about debit card prices—it only

---

[3] *Dependable Sales & Serv. v. Truecar, Inc.*, 2016 U.S. Dist. LEXIS 1424, at *20-21 (S.D.N.Y. Jan. 6, 2016) ("At the Rule 12(b)(6) stage, the Court cannot determine whether the 'factory invoice' definition contained on TrueCar's web page … cured any allegedly misleading advertisement citing a factory invoice price."); *Lemberg Law, LLC v. Egeneration Mktg., Inc.*, 2020 U.S. Dist. LEXIS 94879, at *30 (D. Conn. May 29, 2020) (whether a disclaimer "effectively cures an otherwise misleading advertisement is a matter of fact, which may be an improper determination on a Rule 12(b)(6) motion to dismiss."); *Madenlian v. Flax USA Inc.*, 2014 U.S. Dist. LEXIS 181473, at *7 n.3 (C.D. Cal. Mar. 31, 2014) ("The Court finds that the extent to which this additional language clarifies the ambiguity of the 'All Natural' representation is a fact question not suitable for resolution at this stage in the litigation.").

advertised cash and credit card prices. *Id.* So the defendant in *Kurimski* was not advertising falsely low prices and then charging more by adding undisclosed fees. The claims were dismissed because "the merchant has made no prior representation as to the price to be charged" for debit cards, not because an earlier false price was cured by a later disclosure. *Id.*[4] Likewise, in *Berry* and *Vorst*, the supposedly "hidden" fees were disclosed from the start; what was alleged to be deceptive was the name given to the fees. *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361, 1367-68 (S.D. Fla. 2007) (alleging that registration fee was deceptively described); *Vorst v. TBC Retail Grp., Inc.*, 2012 U.S. Dist. LEXIS 200363, at *5-6 (S.D. Fla. Apr. 11, 2012) (alleging that "oil disposal fee" name was deceptive). So neither of those cases involved representations about price rendered false by the later addition of undisclosed fees.[5] And *Casper* did not involve "hidden fees" at all. It involved statements about mattresses that the court concluded were "mere opinions" and so "not actionable." *Casper Sleep, Inc. v. Nectar Brand LLC*, 2020 U.S. Dist. LEXIS 174740, at *15 (S.D.N.Y. Sep. 23, 2020).

### 3.    Advertising deceptively low prices is not industry standard.

Finally, Defendants claim that because all four of them are engaged in the same pattern of false advertising, this practice is "industry standard" and therefore cannot possibly deceive consumers. Mot. 10. This argument is meritless. That four players in the contact lens industry (out of many) advertise artificially low prices does not establish that it is "industry standard" to advertise artificially low prices—much less that doing so is so commonplace and well-known that consumers

---

[4] What's more, unlike here, "[t]he price per gallon displayed at the pump is not inconspicuous … the consumer is already looking at the screen when the price per gallon is displayed." *Id.* So the true price was conspicuously disclosed.

[5] Notably, *Berry* acknowledged that advertising an artificially low price and then adding later-disclosed fees would be deceptive—but the plaintiffs had made no allegations regarding such deceptive ads: "Plaintiffs further argue that the Defendants' practices are deceptive because by itemizing the CRF, they are advertising a lower rental rate than is actually being offered, deceiving consumers into believing that Budget provides more affordable rentals than its competitors. However, if that were the case, it would be the advertising that is deceptive for failing to disclose the CRF, and Plaintiffs have made no allegations whatsoever regarding advertising they saw or relied upon." *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361, 1368 (S.D. Fla. 2007).

cannot possibly be deceived by this practice. What's more, the Complaint pleads that "honest advertisers like Plaintiff and class members advertise the true price they charge for these same contacts." Am. Compl. ¶38. And it alleges that consumers do *not* recognize Defendants' prices to be artificially inflated prices, and instead believe them to be Defendants' actual prices. *Id.* ¶¶131; 40, 58, 75. Viewed in the light most favorable to Plaintiff, these pleaded facts establish that advertising artificially low prices is *not* industry standard, because Plaintiff and other class members (who comprise the vast majority of the market for contacts) do not advertise falsely low prices and instead "advertise the true price" of contacts. *Id.* ¶38. So, Defendants' argument is contrary to pleaded facts. And the factual dispute it raises—whether Defendants' false ads are industry standard and universally known to consumers—cannot be resolved in Defendants' favor on the pleadings.[6]

### B.    Plaintiff plausibly alleges consumer deception.

"When the claims at issue are literally false, capacity to deceive is presumed." *N. Am. Med. Corp. v. Axiom Worldwide Inc.*, 2007 U.S. Dist. LEXIS 112614, at *32 (N.D. Ga. Mar. 29, 2007). Here, because Plaintiff plausibly alleges that Defendants' statements are literally false, consumer deception is presumed. *See* § II.A; *ADT LLC v. Vision Sec., LLC*, 2014 U.S. Dist. LEXIS 104116, at *12 (S.D. Fla. July 30, 2014) (denying motion to dismiss) ("Because these statements are 'literally false,' the Court may presume that they could—or did—deceive consumers"); *ADT LLC v. Teamtronics, Inc.*, 2015 U.S. Dist. LEXIS 188509, at *6 (S.D. Fla. May 18, 2015) (same).

In addition, the Complaint plausibly alleges facts that establish consumer deception. Plaintiff

---

[6] Defendants assert in a footnote that "[t]he FTC specifically regulates the 'Content of advertisements and other representations' and does not prohibit the conduct Plaintiff complains of." Mot. 10 n.7 (citing 16 C.F.R. § 315.7). Defendants suggest that, as a result, what they are doing is blessed by the FTC. This suggestion is meritless. The cited regulation prohibits contact lens sellers from making one particular representation ("that contact lenses may be obtained without a prescription"). That the FTC specifically prohibited this particular representation in no way suggests that contact lens manufacturers are free to make every other conceivable false representation about contact lenses with impunity.

alleges that "Defendants' advertisements had the capacity to lead consumers to believe, and actually did lead consumers to believe, that the advertised contact lenses were available for sale from that Defendant at one price, when in truth they were only available for sale at a much higher price." Am. Compl. ¶131. And Plaintiff pleads detailed facts explaining why. *Id.* ¶¶40-50, 58-64, 75-80, 92-103 (detailing how consumers are deceived by each Defendant's ads). These allegations must be accepted as true and establish consumer deception at this stage. *See Regent Grand Mgmt. v. Tr. Hosp. LLC*, 2018 U.S. Dist. LEXIS 212049, at *12 (S.D. Fla. Dec. 14, 2018) ("at the pleading stage … it is enough to allege that the statement is deceptive"); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1316 (M.D. Fla. 2012) (no burden to provide "evidence of consumer deception).

Defendants argue that Plaintiff has not plausibly alleged consumer deception because "Plaintiff concedes that consumers 'notice the previously undisclosed processing fee,' and yet 'go through with the purchase anyway'." Mot. 10-11. This argument fails. As explained above, the processing fee is not disclosed in the initial search ads and landing pages. When consumers see these initial ads and pages, they indisputably do not know that a processing fee will be added at the end of the checkout process. *Id.* And as the Complaint alleges, these initial ads and webpages are themselves actionable because they drive traffic to Defendants' websites and ultimately influence consumer purchasing decisions—even among consumers who notice the later-disclosed processing fee. *See* §II.A.2 above. This alone is fatal to Defendants' argument.

In addition, Plaintiff does not concede that consumers generally notice the small-print disclosure of the processing fee buried in the later pages of Defendants' checkout process. Far from it, Plaintiff alleges that "Many consumers do not notice that a 'processing fee' is being added to their order" and pleads detailed facts explaining why not (generally, because Defendants go to great lengths to conceal the fee). Am. Compl. ¶34; *see id.* ¶¶48-50, 65-68, 79-84, 102 (detailing how Defendants hide processing fees from consumers). And Plaintiff alleges that even among the group

that notices them, some "mistakenly believe that all contact lens retailers charge similar 'processing fees,' and so they are still getting the best deal possible." *Id.* ¶¶34, 51, 69. Because Plaintiff plausibly alleges that these groups of consumers—those that don't notice the fee and those who think everyone charges the fee—never learn the truth, Plaintiff indisputably pleads consumer deception. This is a second independent reason why Defendants' argument fails. *Millenium Labs., Inc. v. Universal Oral Fluid Labs., Ltd. Liab. Co.*, 2012 U.S. Dist. LEXIS 194457, at *14 (M.D. Fla. Aug. 2, 2012) ("tendency to deceive a substantial portion of the targeted audience" is sufficient).

Defendants also argue that it is implausible that "savvy, price-conscious" consumers would not notice that processing fees are being added to their orders, and that the Complaint's allegations on this point are "conclusory." Mot. 11. Both parts of this argument are wrong.

That consumers might not notice fine-print disclosures is far from implausible—especially when, like here, those fine-print disclosures are intentionally hidden (for example because they are in small light grey font and buried in the middle of the page, Am. Compl. ¶47-48; or because they are only visible if the user scrolls down past what looks like the end of the page and clicks on a generic "taxes and fees" line, *id.* ¶¶62-65). Nor is it implausible that consumers might not notice that a "Grand Total" for multiple boxes of contacts after taxes, shipping and handling reflects a per-box price that is higher than what was initially advertised. *See, e.g., id.* ¶¶66-67.

And the Complaint's allegations are far from conclusory. They explain in detail, for each Defendant, how the disclosures are hidden, and why consumers might not notice that the price they are paying is more than the price that was advertised. Id. ¶¶48-50, 65-68, 79-84, 102.[7]

**C.    Plaintiff plausibly alleges that Defendants' misrepresentations were material.**

---

[7] In *Proeduca Altus*, the challenged statements were not literally false or misleading, and moreover, the plaintiffs merely asserted "that potential students would have been deceived by [them]" without elaboration. *Proeduca Altus, S.A. v. Tech. Trade Grp., Inc.*, 2021 U.S. Dist. LEXIS 230228, at *12 (S.D. Fla. Dec. 1, 2021). And *Kurimski* dealt with a different theory of deception, as discussed above in §II.A.2.

"To satisfy materiality, a plaintiff need only show that a defendant's 'deception is likely to influence the [consumer's] purchasing decision.'" *ADT LLC v. Vision Sec., LLC*, 2014 U.S. Dist. LEXIS 104116, at *12 (S.D. Fla. July 30, 2014) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)). A defendant's deception meets this threshold if it results in the defendant making sales it would not have otherwise made. *See, e.g., Wound Care Concepts v. Vohra Health Servs., P.A.*, 2022 U.S. Dist. LEXIS 20919, at *41 (S.D. Fla. Jan. 27, 2022) (misrepresentation was material because "without it … facilities would not have signed up for and ordered wound dressings from [the defendant]"); *ADT LLC v. Teamtronics, Inc.*, 2015 U.S. Dist. LEXIS 188509, at *6 (S.D. Fla. May 18, 2015).

"Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001). At the pleading stage, it is sufficient to allege that the defendant's deception "had a material effect on purchasing decisions." *See Supplement Ctr., LLC v. Evol Nutrition Assocs.*, 389 F. Supp. 3d 1281, 1289 (N.D. Ga. 2019) (noting that courts "have previously found [this allegation] sufficient" and collecting cases). This is because assessments of materiality are "peculiarly ones for the trier of fact." *Tocmail Inc. v. Microsoft Corp.*, 2021 U.S. Dist. LEXIS 214149, at *8 (S.D. Fla. July 16, 2021).

> **1.    Plaintiff plausibly alleges that Defendants' misrepresentations are likely to influence purchasing decisions.**

Plaintiff alleges that Defendants' deception "had a material effect on purchasing decisions." Am. Compl. ¶132. At this stage, that is sufficient. *Supplement Ctr.*, 389 F. Supp. 3d at 1289. In addition, Plaintiff alleges—and pleads detailed facts showing—that Defendants' misrepresentations are likely to influence purchasing decisions. It alleges that "[p]rice is an important characteristic of contact lenses that consumers pay close attention to when deciding where to purchase their contacts." Am. Compl. ¶132. Because of this, Defendants and other sellers of contact lenses "extensively advertise their offerings online." *Id.* ¶¶24, 28. "[P]ricing information is prominently

displayed on online ads" and "consumers care very much about the price." *Id.* ¶25; *see id.* ¶¶26, 38, 56, 73 (Defendants' ads). Before purchasing contact lenses "many consumers check to see if they can get a better price elsewhere." Am. Compl. ¶¶30-31 (alleging this is true for shoppers at both brick and mortar and online stores). And consumers see Defendants' ads and, "[l]ured by Defendants' false statements, consumers decide to purchase contact lenses from Defendants, and not from other retailers such as Plaintiff and class members," *id.* ¶29, and do so "specifically because of Defendants' false representations about the price." *Id.* ¶132.[8]

The Complaint also pleads detailed facts describing precisely why, once lured in, consumers buy from Defendants rather than Plaintiff and the class. Relying on Defendants' advertised prices, "consumers click on Defendants' ads which link to Defendants' websites." *Id.* ¶32. "The websites then display the same prices displayed in the ads," and consumers go through lengthy checkout processes. *Id.*; *see id.* ¶¶38-47, 56-67, 73-81, 92-97. Late in the process, Defendants add a hefty processing fee to the total. *Id.* ¶33. "Defendants attempt to conceal that they are adding this fee to the order in a number of ways." *Id.* ¶34; *see id.* ¶¶48-50 (describing Optimax's "small-text disclosure" in "small grey font"), ¶¶78-82, 64-68, 96-102 (same for other Defendants). Many consumers either do not notice the added fee or believe that all contact lens retailers charge similar fees. *Id.* ¶34. Others notice the fees but go forward anyway because they have already invested time and effort in the checkout process and the final price is comparable to the price elsewhere. *Id.* "In any of these situations, the result is the same: a consumer who otherwise would have purchased contact lenses from Plaintiff or class members, purchases contacts from one of Defendants instead." *Id.* ¶35; *see id.* ¶¶39-53 (describing Optimax's checkout process and explaining in detail precisely how its false ads divert consumers), ¶¶57-71, 74-86, 93-104 (same for other Defendants).

---

[8] That Defendants' marketing strategy prominently touts pricing "provides evidence that [defendant's advertised claims] are material because they influence purchasing decisions." *Merial LLC v. FidoPharm, Inc.*, 2014 U.S. Dist. LEXIS 199682, at *56-57 (N.D. Ga. Sep. 5, 2014).

These detailed facts must be accepted as true. And they establish that Defendants' ads actually result in sales that Defendants otherwise would not have made. This is fatal.

In addition, Plaintiff's Complaint cites compelling evidence—a public admission by a defendant—showing that Defendants' ads *actually do* divert sales away from honest retailers and to Defendants. As the Complaint alleges, if a consumer notices the small-print disclosure that a processing fee is added and clicks on it to obtain more information, Defendant Contact Lens King displays a message that *admits* that the very deceptive pricing in online ads at issue in this case leads to "a decrease in traffic and total orders" to honest retailers who do not employ this strategy:

> A processing fee of $17.49 will apply per box.
>
> Recently, we've noticed that our competitors have introduced and implemented this tool, used as a means of allowing their upfront display prices on various online advertising channels to appear more competitive. As we know, when a company advertises a lower price, there is increased traffic to their website. Upon the realization that this strategy was being used, we at Contact Lens King stood firmly against applying such a practice. However, in spite of the fact that we offer the lowest bottom line prices, we experienced a decrease in traffic and total orders. Through re-evaluation, and despite our discomfort, we have made the tough decision to adopt the practice as well. Contact Lens King is firmly committed to offering the lowest bottom line prices online, and we want our customers to rest assured that through us, you will always see significant savings in your pocketbook - even with the fee.
>
> We totally understand that this additional fee can be frustrating, or even infuriating, but we invite you to compare our bottom line prices with our competitors'. We promise we won't disappoint you!
>
> The price displayed for this item is the lowest price possible. No additional discounts are available even with a coupon.

Am. Compl. ¶96. This party admission is compelling evidence that Defendants' deception is material, that would foreclose summary judgment in Defendants' favor. It certainly precludes dismissal.

### 2.  Defendants' arguments are contrary to pleaded facts and wrong.

Defendants argue that for consumers who did not notice the processing fee, price must not have been material (otherwise they would have noticed the fee). And for consumers who did notice the fee, the advertised price must not have been material (otherwise they would not have gone through with the purchase). Mot. 14. Both halves of this argument fail.

That consumers do not notice that a processing fee is being added to their order does not suggest (much less establish as a matter of law) that those consumers do not care about price and so could not possibly have been influenced by Defendants' false ads. As the Complaint alleges, "Consumers typically buy multiple boxes at a time," (usually a 6-month or 12-month supply of 4-8 boxes) so noticing that a fee was added "would require them to perform mental math and realize that the total displayed is more than the product of the per-box price Defendant advertises and the number of boxes they purchased." Am. Compl. ¶50; *id.* ¶¶68, 84, 102. And consumers have no reason to perform this calculation because they already selected the best advertised price upfront and "[n]o reasonable consumer expects that an advertised price is missing a made up 'processing fee' that is going to nearly double the price." *Id.* ¶40. Defendants' suggestion that consumers always perform complex mental math to verify that the total they are being charged for an online purchase reflects earlier-advertised prices of the individual items in their order is contrary to pleaded facts and reality.

By the same token, that consumers go through with orders anyway after noticing a previously undisclosed processing fee does not suggest (much less establish as a matter of law) that the previously advertised price played no role in their purchase. As the Complaint alleges, some consumers "mistakenly believe that all contact lens retailers charge similar 'processing fees,' and so they are still getting the best deal possible." *Id.* ¶34. For those consumers, the initial deception indisputably influences purchasing decisions: it persists throughout the checkout process. Moreover, by the time the processing fee is first displayed, consumers "have already invested substantial time

and effort inputting their information into the Defendants' system, uploading their prescription, and so forth." *Id.* ¶34. And Defendants' true prices are comparable to those of honest retailers, so consumers have no incentive to reverse course and buy elsewhere. *Id.* ¶¶52, 70, 85, 103. So even among consumers who notice the fee, the initial ad influences purchasing decisions: without it, the consumers would not have started down the path of purchasing contacts from Defendants.[9]

The Eleventh Circuit's decision in *ZPR Inv. Mgmt. v. SEC*, 861 F.3d 1239, 1249 (11th Cir. 2017), addressing an indistinguishable situation in the analogous context of investment advisor misrepresentations, is instructive. *Id.* Like Lanham Act claims, those claims require a showing of materiality. *Id.* Like the Defendants here, the defendant in *ZPR* argued that this requirement was not met because, after making false statements in ads to draw investors in, it provided disclosures that revealed the truth before anyone invested. *Id.* The Eleventh Circuit rejected this argument. "A later disclosure would not have cured the misrepresentation that already occurred at the advertising stage because, again, many institutional investors screen for [the falsely advertised attribute] … The problems caused by a false ad cannot be cured by passing along corrected information to the very customers the company attracted through the misinformation in the first place." *Id.* at 1250.

This case is on all fours with *ZPR*. As the Complaint alleges, many consumers screen for price, and Defendants' false ads attract consumers who would not have otherwise visited Defendants' websites. Am. Compl. ¶132. So Defendants' false statements have succeeded, regardless of whether Defendants provide enough information later for a careful consumer to detect the misrepresentation. *Id.* ¶¶52, 70, 85, 103. This is especially true here, because, when that information

---

[9] Defendants assert that "the gravamen of a [Lanham Act] complaint must be consumer injury or harm to the public interest, not mere competitive disadvantage." Mot. 13. n.10 (quoting *Casper,* 2020 U.S. Dist. LEXIS 174740 at *13). But the quoted section of *Casper* is discussing sections 349-350 of New York's General Business Law, a consumer protection statute—not the Lanham Act. In any event, Defendants' anticompetitive practices harm consumers by deceiving them into making purchases they otherwise wouldn't make.

is provided, consumers have no incentive to switch course. *See* §II.C.1 above.

3.      **Defendants' cases are inapposite.**

Defendants rely heavily on *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 365-66 (S.D. Fla. 1996). But the facts in *Tire Kingdom* could not be more different. The defendant there indisputably honored the prices it advertised on billboards "at the request of the customer." *Id.* at 367. And unlike here, there was no contention that the higher in-store prices were hidden or buried in the grand total charged during checkout. *See id.* So, the court reasoned, when confronted with an obviously higher price in-store, consumers drawn in by the defendant's ads would ask about, and get, the advertised price. *Id.* And those not drawn in by the ad (who just happened to go to the store without seeing the ad) could not possibly have been influenced by an ad they didn't see. *Id.*

Defendants also rely on *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1337-38 (S.D. Fla. 2015). In *Ray*, however, the plaintiffs were not alleging that they were drawn to defendants' website by a deceptive ad (and instead "abandoned their allegations related to advertising," *id.* at 1338). They were claiming that the checkout page itself (which included an accurate total cost) was deceptive because it improperly placed a carrier-imposed "passenger usage fee" under the heading "taxes and fees," which plaintiffs claimed "consumers assume is reserved for mandated government-imposed taxes." *Id.* at 1337. In other words, the supposedly undisclosed fee was disclosed on the supposedly deceptive page itself. Here, by contrast, it is undisputed that Defendants' processing fees are not disclosed in the ads, and instead only disclosed later in the process. And Plaintiff is not claiming that the checkout page is deceptive for failing to disclose a fee that is plainly there.[10]

Defendants cite several out-of-Circuit cases involving additional fees alleged to be deceptive.

---

[10] Defendants quote an excerpt from the hearing in *Ray*. But *Ray* was a RICO case, and the Court was commenting on whether going through with a transaction where a material fact was hidden in an initial ad but ultimately disclosed could constitute "criminal fraud." *Ray*, No. 12-cv-61528-RNS, [ECF No. 100] at 10-11. This is not the same as whether the initial ad in that hypothetical scenario would be actionably deceptive.

But in each of those cases, the challenged ads themselves disclosed that a fee would be added, either by disclosing the fee itself or by making it clear that fees would be added to the quoted price. *See Harris v. Las Vegas Sands L.L.C.*, 2013 U.S. Dist. LEXIS 185587, at *14-16 (C.D. Cal. Aug. 16, 2013) (challenged page disclosed fees); *Charbonnet v. Omni Hotels & Resorts*, 2020 U.S. Dist. LEXIS 236726, at *10 (S.D. Cal. Dec. 16, 2020) (initial ad had both rate with and without fees, one "in a slightly larger font" than the other); *Washington v. Hyatt Hotels Corp*, at *7 (N.D. Ill. June 9, 2020) (ad disclosed presence of fees by stating price was "<u>from</u> $104 avg/night") (emphasis added); *Ford v. Hotwire, Inc.*, 2008 U.S. Dist. LEXIS 108584, at *8-9 (S.D. Cal. Feb. 25, 2008) (ad expressly stated that price "does not include certain charges, such as resort fees, that a hotel may impose directly"). For that reason—as another district court found in a case involving a situation analogous to the one here, where the defendant advertised falsely low prices and later disclosed that a fee applied—these cases are distinguishable. *See Hall v. Marriott Int'l*, 2020 U.S. Dist. LEXIS 148467, at *24-26 (S.D. Cal. Aug. 14, 2020) (distinguishing these cases and finding ads materially deceptive even though "the consumer is twice informed of the resort fee before committing to a reservation.").[11]

### D. Plaintiff plausibly alleges injuries that confer Lanham Act standing.

"A plaintiff sufficiently pleads injury under the Lanham Act if it plausibly alleges any 'economic or reputational harm' caused by defendant's misrepresentations which led consumers to 'withhold trade from the plaintiff.'" *Tocmail Inc. v. Microsoft Corp.*, 2021 U.S. Dist. LEXIS 214149, at *11 (S.D. Fla. July 16, 2021) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)). Allegations that deceptive ads caused "loss of goodwill and loss of sales" satisfy this test. *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017)

---

[11] Defendants also cite *Gustarson*. But in that case, the plaintiff failed to identify any representation made by defendant that was alleged to be deceptive, and so the court dismissed the claims for failing to satisfy Rule 9(b)'s heightened pleading standard. *See Gustavson v. Oxford Hotels & Resorts, LLC*, 2021 U.S. Dist. LEXIS 162025, at *8 (N.D. Ill. Aug. 26, 2021).

(plaintiff not required to "allege in 'detail' how its goodwill was damaged or how sales declined"). Plaintiff plausibly alleges both economic and reputational harm, in far more detail than required.

**Economic harm**: The Complaint alleges that "Plaintiff has lost sales and market share due to Defendants' conduct." Am. Compl. ¶116. And it pleads facts establishing how this happens: consumers compare prices for contacts and see Defendants' ads, and leave Plaintiff's store without purchasing contacts. *Id.* ¶30. Thus, "[a]s a direct result of Defendants' advertisements, patients who would have otherwise bought contact lenses from Plaintiff left Plaintiff's stores without purchasing contacts, believing (incorrectly) that they could obtain those same contacts at a better price by ordering them online from Defendants." *Id.* ¶116; *see id.* ¶¶50-53, 68-71, 84-86, 101-104. And because Defendants' ads lead consumers to "believ[e] (incorrectly) that Plaintiff's prices were not competitive, patients did not buy other products (such as glasses) from Plaintiff." *Id.* ¶116. These allegations must be accepted as true, and establish that Defendants' misrepresentations led consumers to withhold trade from the plaintiff. This establishes economic harm.

**Reputational harm:** The Complaint also alleges that "Plaintiff's reputation and goodwill were damaged as a result of Defendants' advertisements." Am. Compl. ¶117. Moreover, it pleads facts supporting this allegation. "Based on [Defendants'] advertisements, customers and potential customers of Plaintiff incorrectly believed that Plaintiff was charging a lot more for contact lenses than his online competitors were." *Id.* And that perception is "damaging to Plaintiff's reputation and goodwill." *Id.* These allegations too must be accepted as true, and establish reputational harm.

       1.        **Plaintiff plausibly alleges that it competes with Defendants.**

Defendants argue that because the Complaint does not include a list of all of the contact lenses that Plaintiff sells, "Plaintiff fails to even allege that it competes with Defendants with respect to the advertisements." Mot. 17. Defendants argue that, as a result, Plaintiff has failed to "allege any competitive injury traceable back to Defendants' advertisements." Mot. 18. This argument fails.

Plaintiff plausibly alleges that it sells contact lenses that Defendants deceptively advertise. It alleges that Defendants' ads are "for <u>competitive</u> contact lenses" and that patients "complain about Plaintiff's contact lens prices" based on the fact that Defendants advertise lower prices for them. Am. Compl. ¶113. It provides an example of one of the brands of contacts that Defendants advertise that Plaintiff sells: the "1-Day Acuvue Moist lenses." *Id.* ¶114. And it alleges that customers that are considering buying a particular brand of contacts from Plaintiff "find[] Defendants' ads stating that Defendants sell the same contact lenses for a much lower price," and ultimately "leave the store without purchasing contacts." *Id.* These well-pleaded facts establish that Plaintiff sells at least some of the contacts that Defendants advertise. There is no need for a list.

In addition, Plaintiff's websites—which are cited in the Complaint (¶10) and so, as Defendants acknowledge (Mot. 4, n.2), are incorporated in it—*do* identify all the contact lenses that Plaintiff sells. *See* Franzini Decl. Ex. A (website printout). Those include each of the top 20 brands of contact lenses for which Defendants run misleading ads. *See id.*; Am. Compl. ¶27 (listing brands Defendants advertise). So the pleadings actually do identify each brand of competitive contact lenses Plaintiff sells. And each of those brands is deceptively advertised by Defendants.[12]

Finally, Defendants assert that people who decide not to buy from Plaintiff might buy from some other non-party retailer of contacts (besides Defendants and Plaintiff). Defendants' speculation is beside the point. Where consumers buy from is irrelevant—once Defendants' ads induce consumers not to buy from Plaintiff, Plaintiff has been harmed.

> **2.     Defendants' arguments about Plaintiff's prices turn on disputed facts, and get those disputed facts wrong.**

Defendants next assert that Plaintiff fails to plead information about its own pricing. Mot.

---

[12] Defendants also point out that Plaintiff does not advertise on Google ads. But as the Complaint alleges in detail, Defendants' Google ads do not merely divert sales away from other retailers who use Google ads. They also divert sales away from brick-and-mortar retailers such as Plaintiff. *See* above at pp. 11-12; Am. Compl. ¶¶30, 114.

18-20. Defendants suggest that this is necessary because their ads can only take business away from retailers whose prices are equal to or less than their own true prices. *Id.* Defendants also suggest that Plaintiff's prices are higher than theirs. *Id.* All three parts of this argument are wrong.

Customers are often willing to pay a little more—but certainly not double—for the convenience of buying contact lenses in store. So Defendants' ads actually do harm retailers who charge more than Defendants. And at a minimum, the extent of the harm caused to those retailers is a factual dispute that cannot be decided on the pleadings. *See Vitamins Online, Inc. v. Dynamic Indus., LLC*, 2015 U.S. Dist. LEXIS 180368, at \*14-15 (N.D. Ga. May 5, 2015) (denying motion to dismiss Lanham Act claim on factual questions of causation); *Phx. Entm't Partners, LLC v. Aguayo*, 2016 U.S. Dist. LEXIS 187940, at \*16 (M.D. Fla. Oct. 23, 2016) (same).

In addition, Plaintiff actually does plead information about its pricing. Plaintiff alleges that Defendants' true prices "are about the same as the prices honest retailers such as Plaintiff advertise" because the price that Defendants and Plaintiff both charge "is the market price." Am. Compl. ¶4. These allegations must be accepted as true; Defendants cannot dispute them at this stage.

Finally, Defendants are wrong on the facts. The price that matters to consumers is the price they actually pay, which for contacts, often means after rebates. And although Plaintiff's pre-rebate list price for some contacts is higher than Defendants', on typical orders (i.e., 6-month or 12-month supplies), Plaintiff's prices after rebates are "about the same" as Defendants', as the Complaint alleges. Taking Defendants' example, for a 12-month supply of 1-Day Acuvue Moist contacts, the after-rebate price is $52.50 per box (and this is shown on the same page Defendants quote in support of this argument, Defs. Ex. 3). That price is within 60 cents of the true price Defendants charge. *See* Am. Compl. ¶¶47-48 (Optimax's price for two boxes is $103.96, or $51.98 per box).

**III.   Conclusion.**

Defendants' motion should be denied in full.

Dated: January 9, 2023

Respectfully submitted,

*/s/ Rachel Dapeer*

**DAPEER LAW, P.A.**
Rachel Dapeer
Florida Bar No. 108039
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-610-5223
*rachel@dapeer.com*

**DOVEL & LUNER, LLP**
Simon Franzini
Cal. Bar No. 287631*
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: 310-656-7066
*simon@dovel.com*

* Admitted Pro Hac Vice

*Counsel for Plaintiff and the Proposed Class*