UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO.: 1:22-CV-22534-SCOLA-GOODMAN**

NEW VISION UNLIMITED, LLC, d/b/a
VISION UNLIMITED, individually and on
behalf of all others similarly situated,

    *Plaintiff*,

v.

OPTIMAX INVESTMENTS, LTD.,
LENS.COM, INC.,
WEB EYE CARE, INC., and
CONTACT LENS KING, INC.,

    *Defendants*.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION
TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

    I.    Plaintiff Fails to Adequately Allege Falsity............................................................... 1

    II.    Plaintiff Fails to Adequately Allege Consumer Deception....................................... 5

    III.    Plaintiff Fails to Adequately Allege Materiality....................................................... 6

    IV.    Plaintiff Fails to Adequately Allege Any Injury, Much Less an Injury Sufficient to Establish Standing.................................................................................................... 9

CONCLUSION.............................................................................................................................. 10

## TABLE OF AUTHORITIES

### Cases

*Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-CV-4459, 2020 WL 5659581
 (S.D.N.Y. Sept. 23, 2020) .................................................................................................. 8

*Charbonnet v. Omni Hotels & Resorts*, No. 20-CV-01777, 2020 WL 7385828
 (S.D. Cal. Dec. 16, 2020) ................................................................................................. 8

*FTC v. Fleetcor Techs., Inc.*, No. 19-CV-5727, 2022 WL 3273286
 (N.D. Ga. Aug. 9, 2022) ................................................................................................... 3

*FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375 (M.D. Fla. 2018) ...................................................... 3

*Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715, 2020 WL 4727069
 (S.D. Cal. Aug. 14, 2020) ................................................................................................. 9

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256 (11th Cir. 2004) .............................................. 5

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018) ................................... 7

*J-B Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778 (11th Cir. 2020) ................................................. 7

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242
 (11th Cir. 2002) ............................................................................................................. 1, 7

*Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228 (S.D. Fla. 2021) ................................. 3, 4, 6, 7, 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .............................. 10

*Marty v. Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014) ........................................... 4

*Miller v. Travel Guard Grp., Inc.*, No. 21-CV-09751, 2022 WL 2712507
 (N.D. Cal. July 13, 2022) .................................................................................................. 3

*Proeduca Altus, S.A. v. Tech. Trade Grp., Inc.*, No. 21-CV-22639-RNS, 2021 WL 5632397
 (S.D. Fla. Nov. 1, 2021) ............................................................................................ 3, 5, 6, 9

*Strong Current Enters. Ltd. v. Affiliati Network, Inc.*, No. 20-CV-23692, 2021 WL 1383369
 (S.D. Fla. Jan. 26, 2021) ................................................................................................... 6

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360 (S.D. Fla. 1996),
 *aff'd*, 136 F.3d 139 (11th Cir. 1998) ........................................................................... 2, 8, 9

*Washington v. Hyatt Hotels Corp.*, No. 19-CV-04724, 2020 WL 3058118
 (N.D. Ill. June 9, 2020) ..................................................................................................... 8

*ZPR Inv. Mgmt. Inc. v. SEC*, 861 F.3d 1239 (11th Cir. 2017) ................................................. 3, 8, 9

**INTRODUCTION**

Plaintiff's Opposition [ECF No. 57] fails to meaningfully distinguish any of the authorities cited in Defendants' Motion [ECF No. 56] mandating dismissal of Plaintiff's Lanham Act false advertising claim. Instead, the Opposition ignores or misconstrues those authorities, relies on inapposite case law, or falls back on the refrain that the multiple independent pleading deficiencies identified by Defendants are "factual disputes that cannot be decided on the pleadings." Opp. at 20; *see also id.* at 4, 6, 8, 11, 19. But Defendants' arguments rely on Plaintiff's own allegations—or absence thereof—and the representations in the very websites that Plaintiff concedes are "cited in the Complaint and [thus] . . . incorporated in it." *Id.* at 19 (citation omitted). Because Plaintiff's false advertising claim fails to adequately allege falsity, deception, materiality, or standing—and these deficiencies cannot be cured—the Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.      Plaintiff Fails to Adequately Allege Falsity.**

To sufficiently allege that Defendants' advertisements are false, Plaintiff is required to plead that the advertisements are either (1) "literally false," or (2) "true, but misleading." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). Defendants' advertisements are both literally true and, when viewed in their full context, not misleading. Mot. at 6-10. Plaintiff's falsity arguments fail for multiple reasons.

*First*, Plaintiff cannot establish that Defendants' advertisements are literally false. To the contrary, the Opposition *concedes* that when consumers click on the Google ads at issue in the Amended Complaint and purchase a single box of contacts from Defendants' respective websites, consumers pay prices that are materially identical to the advertised prices. *Compare* Mot. at 4, 7, Ex. 1, *with* Opp. at 3-5, 19 (acknowledging that the screenshots of Defendants' website checkout interfaces attached as Exhibit 1 are "incorporated" in the Amended Complaint). This concession

1

is dispositive: because "the advertised [contacts] can be purchased at the advertised price, . . . the advertisement is neither literally false nor misleading." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 367 (S.D. Fla. 1996), *aff'd*, 136 F.3d 139 (11th Cir. 1998).

Rather than making any attempt to distinguish *Tire Kingdom* or the analogous authorities cited in the Motion on this point, *see* Mot. at 8, Plaintiff argues that Defendants are attempting to "assert an alternative interpretation of their ads." Opp. at 3. But it is Plaintiff that advances arguments that are inconsistent with Defendants' ads and Plaintiff's allegations. *Id.* For example, Plaintiff argues, without any citation or support, that "[a]s a general matter, per-item pricing typically stays the same, or sometimes goes down, if you buy multiples of the same item," such as "at the grocery store, [where] apples cost the same whether you buy one apple or three." *Id.* at 4. By that unsupported logic, Plaintiff argues that Defendants' online ads stating single-box prices must be read as guaranteeing the *total price of multi-box orders*. *Id.* Plaintiff's apples-to-contacts comparison cannot be squared with the content of Defendants' advertisements, the allegations in the Amended Complaint, or the case law. Because "it costs the advertised price to purchase each box of contacts . . . from Defendant[s]"—provided that consumers order one box at a time—and "there is nothing in Defendants' ads" representing anything to the contrary, *id.* at 3-4 (quoting Am. Compl. ¶ 40) (alterations omitted), Defendants' ads are literally true on the face of the Amended Complaint. This alone warrants dismissal. *See Tire Kingdom*, 915 F. Supp. at 367-68.

*Second*, the Opposition also concedes that Defendants disclose the existence of all processing fees for multi-box contact lens orders before checkout, precluding any finding that Defendants' online advertisements are misleading. *Compare* Mot. at 8-9, *with* Opp. at 5-7. Plaintiff attempts to evade the dispositive impact of this concession by arguing that "the disclosures Defendants point to are not part of Defendants' internet ads." Opp. at 5-6. But this

2

argument contradicts a key premise of Plaintiff's false advertising claim—namely, that "Defendants' statements about their prices, *in their advertisements and on their webpages*, are false and deceptive and misrepresent Defendants' prices." Am. Compl. ¶ 106 (emphasis added); *see also id.* ¶¶ 30, 31, 50, 68, 84, 102 (relying on Defendants' "website" or "webpage"); Mot. at 8-9.

Plaintiff attempts to disavow its own allegations now by arguing that it was referring only to the "landing pages" of Defendants' respective websites, Opp. at 5, but that argument has no basis in logic or law. In evaluating falsity, Defendants' advertisements must be viewed in their "full context." *Proeduca Altus, S.A. v. Tech. Trade Grp., Inc.*, No. 21-CV-22639-RNS, 2021 WL 5632397, at *3 (S.D. Fla. Nov. 1, 2021). That includes, as Plaintiff pleads in the Amended Complaint, *both* Defendants' Google ads *and* the additional information included on Defendants' websites, including Defendants' checkout interfaces. Mot. at 8-9.[1]

Plaintiff offers no tenable distinction to the cases cited in the Motion finding that such disclosures bar false advertising or analogous unfair trade practice claims as a matter of law. *Id.* For example, Plaintiff argues that *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228 (S.D. Fla. 2021), hinges on a distinction between debit cards and credit cards, not on the fact that disclosure of the

---

[1] The Opposition exclusively relies on inapposite cases dealing with separate, inadequate disclosures that were not linked to the advertisements at issue. *See FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1392-93 (M.D. Fla. 2018) (disclaimer was never disclosed to the purchaser, but instead buried in a terms and conditions webpage separate from the checkout page); *FTC v. Fleetcor Techs., Inc.*, No. 19-CV-5727, 2022 WL 3273286, at *12, *16 (N.D. Ga. Aug. 9, 2022) (disclosure was only sent to the consumer in a separate terms and conditions document *after* consumers signed up for program); *ZPR Inv. Mgmt. Inc. v. SEC*, 861 F.3d 1239, 1248-50 & n.6 (11th Cir. 2017) (assessing materiality under a different standard—the "antifraud provisions of the Advisers Act"—and holding that disclosures did not render ads immaterial because the disclosures were subsequent to, and separate from, the ads); *Miller v. Travel Guard Grp., Inc.*, No. 21-CV-09751, 2022 WL 2712507, at *2-3 (N.D. Cal. July 13, 2022) (the defendant only partially disclosed facts, and never disclosed the exact amount of a fee).

3

total price to be paid for gas at the pump precluded the plaintiff's theory that a lower advertised price was deceptive. Opp. at 6-7. Plaintiff's strained reading finds no support in Judge Middlebrooks' decision, which expressly held that because "any possible deception [was] dispelled by the disclosure of the price per gallon at the pump, Plaintiff fail[ed] to sufficiently plead a deceptive act." *Kurimski*, 570 F. Supp. 3d at 1249.

Plaintiff also attempts to manufacture a factual dispute based on the argument that "the processing fee disclosures are at best inconspicuous and at worst downright hidden." Opp. at 6. But that argument is belied by the screenshots excerpted in the Amended Complaint, which each reflect processing fees that are clearly identified as such in normal-sized font "in the middle of the page" on Defendants' checkout or shopping cart interfaces and accompanied by hyperlinks providing additional information. Am. Compl. ¶ 48; *see also id.* ¶¶ 63, 78-80, 94. Plaintiff fails to distinguish the cases cited in the Motion finding such plainly visible online disclosures sufficient to preclude a finding of falsity as a matter of law. *See* Mot. at 8-10.[2]

*Finally*, Plaintiff's contention that Defendants' advertising practices are not the industry standard, Opp. at 7-8, is contradicted by its own allegations. *See, e.g.*, Am. Compl. ¶¶ 8, 24 (alleging that Defendants are "major players in the contact lens industry" that follow substantially similar advertising practices that are approved by Google). Plaintiff's conclusory argument that "honest advertisers" somehow advertise differently, Opp. at 7-8, is unsupported by any facts regarding those advertisers or their practices. Plaintiff cannot retreat from its own allegations regarding standard advertising practices "in the contact lens industry," Am. Compl. ¶ 8, which confirm that Defendants' advertisements are neither false nor misleading.

---

[2] Plaintiff cites only the inapposite decision *Marty v. Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014), involving a disclaimer on the *inside* of a beer carton that was "blocked by the carton" prior to purchase, *i.e.*, it was only visible if a consumer "opens the carton." *Id.* at 1341.

4

## II. Plaintiff Fails to Adequately Allege Consumer Deception.

Just as the Amended Complaint fails to allege falsity, it also fails to adequately allege deception, which requires facts establishing that Defendants' advertisements "deceived, or had the capacity to deceive, consumers." *Proeduca Altus*, 2021 WL 5632397, at *3 (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004)). Plaintiff cites to its formulaic recitation paying lip service to this standard, Am. Compl. ¶ 131, arguing that "[t]hese allegations must be accepted as true and establish consumer deception at this stage." Opp. at 9. But such conclusory allegations are not only unsupported by facts, they are contradicted by Plaintiff's own allegations regarding the sophistication and diligence of online contact lens purchasers, which must be considered in assessing deception. *See, e.g.*, *Proeduca Altus*, 2021 WL 5632397, at *3-4. Plaintiff cannot walk back those allegations of consumer sophistication now to survive dismissal.

To start, Plaintiff acknowledges that many consumers notice the processing fee added to their orders prior to purchasing contacts and complete their purchase anyway. Opp. at 9. Plaintiff's argument that such consumers were still "deceived" because the fee "is not disclosed in the initial search ads and landing pages," *id.*, is unsupported by any authority and uniformly rejected by the authorities cited in the Motion. *See* Mot. at 8-12; *supra* at 3-4.

Similarly, Plaintiff's contention that "'savvy, price-conscious' consumers would not notice that processing fees are being added to their order" because (1) the disclosures are "hidden" in "fine-print," Opp. at 10 (quoting Mot. at 11); and (2) those consumers cannot do "mental math," *id.* at 14, is as far-fetched as it is illogical. As explained above, the processing fees added to multi-box orders on Defendants' respective websites are prominently featured "in the middle of the page" and accompanied by links inviting users to "learn more." Am. Compl. ¶¶ 48-49. And Plaintiff's specific allegations that contact lens consumers "research" and "pay close attention" to prices in a

5

competitive market, *id.* ¶¶ 23, 25, 132, bely Plaintiff's argument that such sophisticated consumers could plausibly be deceived by processing fees that make the total price "approximately double the advertised price," *id.* ¶ 33. *See Proeduca Altus*, 2021 WL 5632397, at *4 (rejecting similarly implausible assertions of deception as to sophisticated consumers); *Kurimski v. Shell Oil Co.*, No. 21-CV-80727, 2022 WL 2913742, at *8 (S.D. Fla. June 30, 2022) (same).[3]

Plaintiff's theory of deception is therefore at odds with its own allegations, and the Amended Complaint should be dismissed for this independent reason.

### III. Plaintiff Fails to Adequately Allege Materiality.

The Opposition fails to meaningfully address the Amended Complaint's absence of allegations establishing that Defendants' advertisements were likely to have a material influence on customers' purchasing decisions. *See* Mot. at 12-16. Plaintiff all but concedes the absence of plausibly pled facts by contending that a single conclusory allegation—that "Defendants' deception 'had a material effect on purchasing decisions'"—is sufficient to survive dismissal. Opp. at 11 (quoting Am. Compl. ¶ 132). Far from it. As this Court has previously recognized in dismissing a Lanham Act claim, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Proeduca Altus*, 2021 WL 5632397, at *2; *see also Strong Current Enters. Ltd. v. Affiliati Network, Inc.*, No. 20-CV-23692, 2021 WL 1383369, at *4 (S.D. Fla. Jan. 26, 2021) (dismissing Lanham Act claim where plaintiff "allege[d] only (and in an entirely conclusory manner) that Defendants' 'false advertising is likely to deceive,

---

[3] Plaintiff's reliance on a lengthy disclosure from Contact Lens King's website further undermines Plaintiff's theories of falsity, deception, and materiality. Opp. at 13 (quoting Am. Compl. ¶ 96). Far from deceiving customers, the disclosure is fully transparent as to not only the amount of the processing fee but also why that processing fee is being added. Moreover, Contact Lens King's explanation that it is implementing the same practice employed by its competitors further demonstrates that Defendants' advertising practices are industry standard. *See supra* at 4.

and has deceived, consumers in a material way'").

Under the proper standard of review, Plaintiff fails to adequately allege materiality. As the Eleventh Circuit has explained, a plaintiff "must establish that the defendant's deception is likely to influence the purchasing decision." *1-800 Contacts, Inc.*, 299 F.3d at 1250. Because "not all deceptions affect consumer decisions," *id.*, allegedly "false statements that are irrelevant to consumer purchasing decisions cannot be the basis for a false advertising claim." *J-B Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 796-97 (11th Cir. 2020).

Here, because the processing fees are fully disclosed to every customer before any purchase is made, the omission of those same fees from Defendants' ads could not have materially influenced any buyer's purchasing decision. Logically, if the omission was material, then the disclosure would result in no sale. *See, e.g.*, *Kurimski*, 570 F. Supp. 3d at 1245-47 (finding price conscious consumers are "not making purchasing decisions based on what [the defendant's ads] don't say," but rather on the final "price . . . being displayed during the transaction"); *see also* Mot. at 12-16. As explained above, Plaintiff's argument that consumers would not have noticed the added processing fee—even though the fee and resulting final price were disclosed before purchase—runs afoul of both common sense and Plaintiff's own allegations that consumers "pay close attention to" prices. Am. Compl. ¶ 132. It also runs contrary to the "reasonable consumer" standard courts must apply. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196, 1197 (11th Cir. 2018). Here, the only plausible inference is that a reasonable consumer *would have* noticed the addition of a disclosed processing fee that, according to Plaintiff, "double[s]" the sale price without any "mental math" required. Am. Compl. ¶¶ 33, 40, 47, 50, 58, 75, 79, 81, 108.[4]

---

[4] Notably, the Opposition makes no attempt to reconcile the obvious contradiction in Plaintiff's positions that consumers are price conscious yet unable to do basic "mental math" when shopping with Defendants, but apparently "willing to pay a little more" and able to calculate the difference

7

To attempt to overcome the basic fallacy at the heart of its allegations, Plaintiff argues that Defendants' ads were nevertheless material because they "lured" customers to Defendants' websites and checkout pages. Opp. at 12. But, as explained in the Motion, courts have repeatedly rejected Plaintiff's "luring" theory—holding that, when additional fees are fully disclosed during the checkout process, the prices initially advertised could not have had a material influence on the customer's ultimate purchasing decision.[5] *See* Mot. at 14-16; *Tire Kingdom*, 915 F. Supp. at 367 (finding, on allegations that false ads containing lower prices "lure[d] customers into the store," that the ads were not material to customers who ultimately paid higher prices because they "would [have] inquired about the advertised price" had that price actually been important); *Charbonnet v. Omni Hotels & Resorts*, No. 20-CV-01777, 2020 WL 7385828, at *3-4 (S.D. Cal. Dec. 16, 2020) (dismissing false advertising claim premised on a "lur[ing]" theory where all fees were disclosed before purchase); *Washington v. Hyatt Hotels Corp.*, No. 19-CV-04724, 2020 WL 3058118, at *4 (N.D. Ill. June 9, 2020) (rejecting theory that ad "lures customers into eventually reserving a room based upon their reliance upon the initial quote").

Unable to meaningfully distinguish these authorities rejecting analogous "luring" theories, Plaintiff simply regurgitates the allegations in the Amended Complaint or otherwise relies on cases that are inapposite and do not involve the Lanham Act or similar standards. *See* Opp. at 14-15. Indeed, Plaintiff's principal case, *ZPR*, is easily distinguishable because it involved a different

---

between the "pre-rebate list price" and "prices after rebates" when shopping with Plaintiff. *Compare* Opp. at 14, *with id.* at 20.

[5] Courts analyze materiality from the perspective of a consumer because the Lanham Act is not concerned with "mere competitive disadvantage." *See* Mot. at 13 n.10. Plaintiff argues that Defendants' reliance on *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-CV-4459, 2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020), is misplaced because that case "discuss[ed] sections 349-350 of New York's General Business Law." Opp. at 15 n.9. But *Casper* made clear "[t]he standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under . . . the [NY GBL]." 2020 WL 5659581, at *5 (alteration in original).

8

standard of materiality than that employed under the Lanham Act. 861 F.3d at 1250 (holding that materiality under the antifraud provisions of the Advisors Act for false statements is "determined in light of the circumstances existing *at the time* the alleged misstatement occurred," notwithstanding later disclosures) (emphasis added). No Lanham Act decision has held that the materiality analysis focuses only on advertised statements in a vacuum. To the contrary, under the Lanham Act "[a]dvertisements must be read in context." *Proeduca Altus*, 2021 WL 5632397, at *3.

If anything, *ZPR* confirms that dismissal is warranted here. Even under a different standard, the court recognized that disclosures that are contemporaneous with or linked to an allegedly false advertisement negate materiality. *ZPR*, 861 F.3d at 1251-52 (where newsletter's second-page disclosure corrected an alleged falsehood on the first page, that first-page falsehood could not have been material because the disclosure was "linked to the [statement]"); *id.* at 1250 n.6 (disclosure on website would have rendered ads immaterial if the ads had directed customers to the website). Here, Defendants' advertisements linked to their websites containing explicit disclosures of all processing fees, thus barring Plaintiff's materiality theory under any standard.[6]

**IV.     Plaintiff Fails to Adequately Allege Any Injury, Much Less an Injury Sufficient to Establish Standing.**

As in the Amended Complaint, the Opposition offers nothing more than conclusory assertions regarding the "economic" and "reputational harm" Plaintiff purportedly sustained. *See* Opp. at 18 (quoting Am. Compl. ¶¶ 116-17). Such formulaic allegations are not enough to survive

---

[6] Plaintiff cites a single California unfair competition case, *Hall v. Marriott International, Inc.*, No. 19-CV-1715, 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020), for the proposition that an allegedly false advertisement may be materially deceiving despite a pre-checkout disclosure. Opp. at 17. But that outlier case did not involve the allegations of consumer sophistication at issue here, and no other case has agreed with or adopted its cursory reasoning, which runs counter to the prevailing view in *Kurimski*, *Tire Kingdom*, *Charbonnet*, and *Washington*.

dismissal. *See Proeduca Altus*, 2021 WL 5632397, at *3; *Casper*, 2020 WL 5659581, at *8.

Independently, Plaintiff cannot show it suffered any harm that was proximately caused by Defendants' advertisements, as required to establish standing under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 (2014). For example, the Opposition concedes that the Amended Complaint fails to allege critical competitive facts, like the brands and prices of contact lenses Plaintiff sells in its stores. *See* Mot. at 17-20. Plaintiff points to *its website* and the brands and prices of contacts it sells there, Opp. at 19-20, but this cuts against Plaintiff for two reasons.

*First*, the "typical scenario" articulated in the Amended Complaint—which is the only allegation that attempts to plead facts, albeit in hypothetical fashion, regarding how Plaintiff could potentially lose sales to Defendants—is premised on customers buying contacts at Plaintiff's brick-and-mortar optometry "office[s]." Am. Compl. ¶¶ 112, 114, 116. The brands and prices of contacts Plaintiff sells on its website are thus irrelevant to Plaintiff's standing allegations.

*Second*, even looking to Plaintiff's website, Plaintiff concedes that its online prices (even after rebates) are *higher* than Defendants'. Opp. at 19-20. Plaintiff's conclusory assertion that "[c]ustomers are often willing to pay a little more" to buy from Plaintiff, *id.* at 20, is entirely unsupported and defies both logic and Plaintiff's own allegations that contact lens consumers are price-sensitive. *E.g.*, Am. Compl. ¶ 132. Thus, even if Plaintiff could adequately plead falsity, deception, and materiality (it cannot), Plaintiff would still be unable to establish that any consumer "withh[e]ld trade from the plaintiff" due to Defendants' advertising—as opposed to, say, Plaintiff's own pricing—as required to plead proximate causation. *Lexmark*, 572 U.S. at 133-34.

## CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Dated: January 10, 2023                                             Respectfully submitted,

/s/ *James E. Gillenwater*
**GREENBERG TRAURIG P.A.**
Mark A. Salky (Bar No. 58221)
James E. Gillenwater (Bar No. 1013518)
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Tel: (305) 579-0500
Fax: (305) 579-0717
salkym@gtlaw.com
gillenwaterj@gtlaw.com
jake.atkins@gtlaw.com
*Counsel for Defendant Optimax Investments, Ltd.*

/s/ *James W. Lee*
**BOIES SCHILLER FLEXNER LLP**
James W. Lee (Bar No. 67558)
Andrew S. Brenner (Bar No. 978663)
Laselve E. Harrison (Bar No. 112537)
Michael C. Mikulic (Bar No. 125073)
100 SE 2nd St., Suite 2800
Miami, FL 33131
Tel: (305) 359-8400
Fax: (305) 539-1307
jwlee@bsfllp.com
abrenner@bsfllp.com
lharrison@bsfllp.com
mmikulic@bsfllp.com
*Counsel for Defendant Lens.com, Inc.*

/s/ *Michael C. Spain*
**NEWMAN DU WORS LLP**
Michael C. Spain (Bar No. 005606)
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
Tel: (206) 274-2800
Fax: (206)-274-2801
michael@newmanlaw.com
*Counsel for Defendant Web Eye Care, Inc.*

/s/ *Benjamin J. Widlanski*
**KOZYAK TROPIN & THROCKMORTON LLP**
Benjamin J. Widlanski (Bar No. 1010644)
Tal J. Lifshitz (Bar No. 99519)
Eric S. Kay (Bar No. 1011803)
2525 Ponce De Leon Boulevard
9th Floor
Miami, FL 33134
305-372-1800
Fax: 305-372-3508
bwidlanski@kttlaw.com
tjl@kttlaw.com
ekay@kttlaw.com
*Counsel for Defendant Contact Lens King, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of January, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ James E. Gillenwater*
JAMES E. GILLENWATER

## SERVICE LIST

**CASE NUMBER: 1:22-CV-22534- SCOLA-GOODMAN**
**United States District Court, Southern District of Florida**

**DAPEER LAW, P.A.**
Rachel N. Dapeer (Bar No. 108039)
20900 NE 30th Ave., Ste. 417
Aventura, FL 33180
Tel: 305-610-5223
rachel@dapeer.com

**DOVEL & LUNER, LLP**
Simon Franzini (*admitted pro hac vice*)
Jonas Jacobson (*admitted pro hac vice*)
201 Santa Monica Blvd., Ste. 600
Santa Monica, CA 90401
Tel: 310-656-7066
simon@dovel.com
jonas@dovel.com

*Attorneys for Plaintiff*
*New Vision Unlimited, LLC*