United States District Court
for the
Southern District of Florida

| | |
|---|---|
| New Vision Unlimited, LLC, dba Vision Unlimited, individually and on behalf of all others similarly situated, Plaintiff,<br><br>v.<br><br>Glasses USA, Inc., and others, Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 22-22534-Civ-Scola<br>)<br>)<br>)<br>)<br>) |

### Order Denying Motion to Dismiss

Plaintiff New Vision Unlimited, LLC, an optical goods and services provider, brings this putative class action against four online contact-lens retailers—Defendants Optimax Investments, Ltd.; Lens.com, Inc.; Web EyeCare, Inc.; and Contact Lens King, Inc.—alleging that they each engaged in false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (Am. Compl., ECF No. 51 ("Compl." or the "Complaint").) In response, the Defendants have jointly filed a motion to dismiss, submitting New Vision has failed to state a claim for false advertising under the Lanham Act. (Defs.' Jt. Mot. to Dismiss, ECF No. 56.) New Vision responded (Pl.'s Resp., ECF No. 57), opposing the motion, and thereafter the Defendants timely replied (Defs.' Reply, ECF No. 58). Previously the Court granted the Defendants' motion for a stay in this case, concluding that, upon a "preliminary peek" of the motion-to-dismiss briefing, the Court found at least one of the Defendants' arguments appeared to be clearly meritorious and truly case dispositive. Upon a more fulsome review, however, the Court finds to the contrary, and **denies** the Defendants' motion to dismiss (**ECF No. 56**) and, accordingly, lifts the stay of discovery.

1. **Background**[1]

New Vision is an eye-care professional and provider of optical goods and services, including contact lens fittings and contact lens sales. (Compl. ¶¶ 10, 20.) New Vision has seven brick and mortar locations in the Miami area and

---

[1] The Court accepts the complaint's factual allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

two websites. (*Id.* ¶ 10.) The Defendants are four unrelated online retailers of optical products, including corrective contact lenses. (*Id.* ¶¶ 1, 11–14, 27.)

The Defendants promote their lenses through Google and other search engines, advertising low prices. (*Id.* ¶ 1.) These advertised prices are "far lower" than the prices New Vision and other "honest" retailers advertise. (*Id.*) Because consumers of contact lenses are very price conscious (*e.g., id.* ¶ 25), they are drawn to the Defendants' ads (*e.g., id.* ¶¶ 30, 34, 50).

But, says New Vision, the Defendants' advertised prices are not truthful: only after a customer has filled out online forms, providing details about her prescriptions, contact information for her doctor (to verify her prescription), and certain biographical and payment information, do the Defendants reveal there is a "processing fee" added to the order. (*Id.* ¶¶ 3–4, 28, 32–33.) This added fee results in the charge for the order being about twice the initially advertised cost. (*Id.* ¶¶ 4, 33, 81.) This final cost ends up being "about the same as the prices honest retailers such as Plaintiff advertise, because this is the true market price." (*Id.* ¶¶ 4, 33.)

On the one hand New Vision says that the Defendants "do everything they can to hide the extra fee on their checkout pages" and, as a result, "many times," "consumers do not even notice that the total amount they are being charged for the order is about the same as what they would have paid if they bought from [New Vision]." (*Id.* ¶¶ 5, 34, 50, 68, 84, 102.) On the other hand, New Vision includes screenshots in its complaint, showing the processing fee's being presented in plain type, in normal-size font,[2] in the middle of the secure checkout page on, for example, Optimax's website. (*Id.* ¶ 46; *see also* ¶¶ 78, 80, (similar display of a "processing fee" on Web Eye Care's website).) Similarly, on Lens.com's website, a comparable "fee" is added into a line item labeled "Taxes and fees." (*Id.* ¶ 63.) Contact Lens King's reference to the processing fee is along the same lines although, unlike the other Defendants, Contact Lens King recites on the first page of its ordering procedure that "[a] processing fee will apply." (*Id.* ¶ 96.)

New Vision says that even if customers do notice the extra fee, they go through with the purchase anyway. According to New Vision this is because, at least in the case of Optimax, Web Eye Care, and Lens.com, the customers have already invested so much time and effort, inputting various information into the Defendants' systems and "don't want to start over" or bother driving back to their optometrist—especially when the final tally is comparable to other

---

[2] New Vision characterizes the font as "small," but it is the same size as most of the other text on the page and bigger than text offering a $15 discount and text appearing to provide links to the "Terms of Use" and the "Privacy Policy."

retailers, like New Vision. (*Id.* ¶¶ 6, 34, 52–53, 70–71, 85–86, 103–04.) Other customers still, New Vision proffers, mistakenly believe all contact-lens retailers charge similar "processing fees." (*Id.* ¶¶ 34, 51. 69.)

New Vision complains that the Defendants' practices amount to false advertising under the Lanham Act and seeks damages and other relief on its own behalf and on behalf of a proposed class of similarly situated plaintiffs.

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

To state a claim of false advertising under the Lanham Act, a plaintiff must allege that "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260–61 (11th Cir. 2004). The Defendants maintain that New Vision fails to allege facts establishing the first, second, third, and fifth elements of its false-advertising claim. After careful review, the Court is not persuaded.

### A. The Defendants fail to convince that the complaint does not allege facts establishing the falsity of the Defendants' ads.

The Defendants argue (1) that their ads are "*literally true*" because consumers can actually purchase *one* box of the advertised contact lenses for the published price; and (2) even if the ads are construed as being either false or misleading, any conceivable deception is cured by the Defendants' full disclosure of the added processing fees prior to the consummation of the purchase. (Defs.' Mot. at 10–14.) The Court is not persuaded by either argument.

"The first element of the Lanham Act test requires that the plaintiff show that the statements at issue were either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hickson*, 357 F.3d at 1261 (cleaned up).

As to their claim that their ads are literally true, the Defendants submit that, contrary to New Vision's allegations, "consumers can purchase one box of the advertised contact lenses for that price on Defendants' respective websites after clicking on the online ads." (Defs.' Mot. at 11.) In support, the Defendants supply screenshots from each of their websites, showing that no processing fee is added to a consumer's purchase when *only* one box is selected. (Defs.' Ex. 1, ECF No. 56-1.) The Defendants also assert that New Vision has not identified "a single advertisement from any Defendant making representations, let alone false representations, about the total final price of ordering multiple boxes of contacts." (Defs.' Mot. at 11.) The Court is not persuaded by either argument.

First, the Court notes that the Defendants introduce the offers displayed exhibit-one screenshots in the present tense. The Defendants themselves highlight this wrinkle in their argument by pointing out that the prices "*now*

advertised" on Google, for two of the Defendants, are not the same as those that were advertised when New Vision filed its complaint. (*Id.* at n. 3 (emphasis added).) Accordingly, the Court has no way of knowing if the Defendants' current offerings correlate to what they sold during the period at issue in the complaint.

Second, the Defendants' criticism that New Vision's complaint is devoid of any examples of a specific advertisement that explicitly makes false representations about the total final price of ordering multiple boxes misses the point. Multiple factual allegations in the complaint, not tethered to any particular ad, claim that, for example, "Defendants' prices are about twice as much as advertised." (Compl. ¶ 4; *see also, e.g., id.* ¶ 28 ("The prices Defendants advertise are artificially low—far lower than the true price that consumers who buy from them ultimately have to pay for the advertised contact lenses."); ¶ 50 (describing the "eleventh hour disclosure that the true price of the contact lenses being offered is double that which was advertised"); ¶ 108 ("[C]onsumers have to pay approximately double the advertised price to purchase contact lenses from Defendants."); ¶ 130 ("Defendants' advertisements stated that the advertised contact lenses were available for sale from that Defendant at one price, when in truth they were never available for sale at that deceptively low advertised price.").) So, even if the Defendants are correct, that the specific advertisements reproduced in the complaint specify the true price of ordering only one box of lenses, other allegations in New Vision's complaint overcome this purported deficiency.

Furthermore, the Court is not convinced that the reproduced advertisements in the complaint all clearly "make representations about the price of one box of contacts." (Defs.' Mot. at 11.) For example, one of the reproduced Contact Lens King ads offers a "90 Pack" for "Only $26.22/box." (Compl. ¶ 26.) While it may be possible to interpret this, as the Defendants urge, to mean that Contact Lens King will in fact honor the $26.22 price if a customer's purchase is limited to one box, that is certainly not the only interpretation. And, indeed, in reading the allegations in the light most favorable to New Vision, as the Court must on a motion to dismiss, a reasonable interpretation would be that the advertised $26.22 price is *per* box, regardless of how many boxes are ordered.

Next, the Court is not persuaded by the Defendants' argument that their disclosure of the processing fees, prior to a consumer's final check out, neutralizes any falsity or perceived consumer deception. While the Court recognizes that "[t]he presence of true information or a disclaimer *can* rebut a claim of deception," *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1246 (S.D. Fla. 2021) (Middlebrooks, J.) (emphasis added), the facts alleged here do not fit

neatly into this absolution-by-disclosure concept, at least not at this stage of the litigation. For example, in *Kurimski*, the Court pointedly found that, unlike here, the initial advertising claims described in the complaint would likely *not* be deceptive to a reasonable consumer. 570 F. Supp. 3d at 1244–45 (describing the plaintiff's expectations as "not plausible"). Accordingly, in *Kurimski*, the Court found that the "presence of accurate information" at checkout was simply an additional reason the Court found plaintiff's falsity assumptions unwarranted, noting "the merchant has made no prior representation as to the price to be charged." *Id.* at 1247, 48 ("It is not plausible that, despite the price per gallon being displayed during the transaction, . . . reasonable consumers would ignore the price displayed on the screen and choose instead to rely on their assumption as to what price they expect to pay."). Here, in contrast, the complaint affirmatively alleges facts from which the Court could infer consumer deception.

     Nor does the Court find the reasoning in *Vorst v. TBC Retail Group, Inc.*, 12-CV-80013, 2012 WL 13026643 (S.D. Fla. Apr. 12, 2012) (Ryskamp, J.) or *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (Cohn, J.) applicable here either. Neither of those cases addresses the situation here, where sellers allegedly advertised products at one price and then added a generic "processing fee," nearly doubling the advertised price, prior to check out. In *Vorst*, for example, the plaintiff's complaint had nothing to do with an advertisement but instead stemmed from the defendant's charging $3 for an "oil disposal fee" that the plaintiff complained was misrepresented as a pass-through cost. *Vorst*, 2012 WL 13026643 at *2. Similarly, in *Berry*, the Court pointedly noted that the plaintiffs there "made no allegations whatsoever regarding advertising they saw or relied upon." *Berry*, 497 F. Supp. 2d at 1368. The claims in *Berry* and *Vorst* related to consumer harms that the plaintiffs there said arose directly from the added fees—misrepresented as pass-through costs—that were included in the price of services. New Vision's claims, in contrast, relate to competitive harms that it says arise directly from the Defendants' deceptive ads. The Court finds these distinctions materially undercut the Defendants' supposition that courts "routinely reject" claims like New Vision's where "hidden fees . . . are disclosed before the customer pays." (Defs.' Mot. at 13.)

     The Court finds *Casper Sleep, Inc. v. Nectar Brand LLC*, 18 CIV. 4459 (PGG), 2020 WL 5659581, at *7 (S.D.N.Y. Sept. 23, 2020) distinguishable for similar reasons. Unlike here, the plaintiff in *Casper* did not allege that its competitors' deceptive ads were directing consumers to their websites under false pretenses. Instead, the purported deception, on the one hand, and the truthful disclosure, on the other, were displayed within the very same website.

This is markedly different from New Vision's claims here, where its allegations center on deceptive ads that purportedly lure consumers away from New Vision, to the Defendants, and the complained of fees are not revealed until deep into the purchasing process or at least not until the consumers have already been lured away.

Finally, the Defendants' supposition that, because the complained of advertising practices are alleged to be commonplace, they are not actionable, is unconvincing. That a purportedly deceptive practice is commonplace does not necessarily, without more, render it the "industry standard." Moreover, even if the practice is found to be the industry standard, the Defendants have not presented any authority that this automatically relieves them of any Lanham Act liability—especially in the context of a motion to dismiss.

In sum, the Defendants have not established that the complaint falls short of alleging the Defendants' advertisements were false or misleading.

### B. The Defendants fail to convince that the complaint does not allege facts establishing consumer deception.

The Defendants argue New Vision has not alleged consumer deception. In support, they (1) point to their arguments as to falsity, as presented above, and (2) submit that New Vision's allegations of deception, in any event, are not plausible. As to their implausibility argument, the Defendants once again rely on their disclosures of the complained of processing fees prior to consumers' finalizing their purchases. Neither argument lands.

As an initial matter, because the Court has already determined that New Vision's literal falsity allegations survive dismissal, deception is presumed. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) ("[O]nce a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception.")

But even if this were not the case, the Court is not persuaded by the Defendants' implausibility argument. The Defendants' position in this regard hinges on their criticism of New Vision's allegations that some consumers may not notice a processing fee that nearly doubles the price of the purchase. While the Court agrees these particular allegations are problematic, especially in light of New Vision's other allegations as to how price conscious the relevant consumers are, this is by no means the only scenario of deception New Vision proffers. Rather, New Vision describes multiple ways in which the Defendants' initial deception results in a sale despite the eventual disclosure of the processing fees. For example, New Vision alleges some consumers go through with the purchase, despite noticing the fee, because of the substantial time and effort they've already expended or because they assume that other retailers

charge a comparable fee. The Defendants fail to even acknowledge those allegations, never mind explain why they fail to satisfy the deception prong of New Vision's claims.

Nor, once again, is the Defendants' reliance on *Kurimski* helpful to their cause. As explained above, *Kurimski*, unlike New Vision's case, involved an advertisement that the Court there pointedly acknowledged was not likely to deceive a reasonable consumer. 570 F. Supp. 3d at 1244–45 (describing the plaintiff's expectations as "not plausible"). That is not the case here: the allegations here implicate a direct deception as to the actual cost of an item; not an inference or assumption that the plaintiff made based on information that was omitted from an ad, as in *Kurimski*. Accordingly, once again, the Court does not find the Defendants' absolution-through-disclosure theory applicable here. *See Dependable Sales & Serv., Inc. v. Truecar, Inc.*, 15-CV-1742 (PKC), 2016 WL 79992, at *4–5 (S.D.N.Y. Jan. 6, 2016) ("While a disclaimer may be so plain, clear and conspicuous as to bar a claim as a matter of law, this is not such a case.").

### C. The Defendants fail to convince that the complaint does not allege facts establishing materiality.

The Defendants' position as to their materiality argument also hinges on their absolution-through-disclosure theory. For a slightly different reason, that theory once again fails them.

To satisfy the materiality prong of a false-advertising claim, a "plaintiff must establish that the defendant's deception is likely to influence the purchasing decision." *Johnson & Johnson*, 299 F.3d at 1250 (cleaned up). Requiring plaintiffs to establish materiality is vital because not all deceptions necessarily affect consumer decisions. *Id.* In other words, "even demonstrably false statements that are irrelevant to consumer purchasing decisions are immaterial and cannot be the basis for a false advertising claim." *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 796–97 (11th Cir. 2020).

The Defendants' argument as to the immateriality of their alleged initial price deception is twofold. On the one hand, they say, if consumers truly fail to notice a near doubling of the price of the product they're ordering, as New Vision alleges, then the advertised prices could not possibly have played a material role in their purchasing decisions. (Defs.' Mot. at 18.) On the other hand, the Defendants continue, if consumers *do* notice the previously undisclosed processing fee, but go through with the purchase anyway, this too shows that the advertised prices were not actually material to their purchasing decisions. (*Id.*) Either way, the Defendants explain, "consumers' purchasing decisions would be based on their willingness to pay the final total price as

disclosed, not on Defendants' advertisements." (*Id.*) The Court agrees with New Vision that the Defendants' theory is flawed.

To begin with, the Defendants improperly zero in solely on the consumers' ultimate purchasing decisions, to the exclusion of any consideration of the deceptive ad that drew the consumers in to begin with. By not addressing, or even acknowledging, the role the initial alleged price deception played in driving consumers away from New Vision and towards the Defendants, the Defendants skip over the core of New Vision's complaint: the Defendants advertised their products at a deceptively low prices that lured them away from purchasing those same products from New Vision and to instead purchasing them from the Defendants.

Once that aspect of New Vision's claim is fully taken into account, the distinguishing aspects of the main cases the Defendants rely on are laid bare. For example, in *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, the Court noted that the plaintiff itself *admitted* "that the advertised tire can be purchased at the advertised price at the request of the customer." 915 F. Supp. 360, 367 (S.D. Fla. 1996) (Ryskamp, J.), *aff'd sub nom. Tire Kingdom v. Morgan Tire & Auto*, 136 F.3d 139 (11th Cir. 1998). Indeed, the *Tire Kingdom* court explicitly determined that, unlike here, "the advertisement is neither literally false nor misleading to the target audience." *Id.* Continuing, that Court determined that "[c]onsumers who are charged more than the advertised price could not have found the advertised price material to their purchasing decision," premising its conclusion on findings that are absent here: (1) the product was actually available at the published price; and (2) consumers had an opportunity, in the store, to request and obtain the item at the published price. *Id.* Conversely, here, New Vision has adequately alleged falsity and, even though consumers may be genuinely price conscious, and therefore drawn in by the deceptive price, the only way they can complete their purchases through the Defendants is by doing so at the price inflated by the additional processing fees. The Defendants' supposition that "reasonable purchasers of Defendants' contact lenses . . . could never find Defendants' processing fees material to their purchasing decisions" misses the mark. (Defs.' Mot. at 18.) It is not the materiality of the processing fees that is at issue here but, rather, it is the materiality of the deceptive prices published in the Defendants' ads that drives consumers to the Defendants' websites and then ultimately influences their final purchasing decisions.

Other cases the Defendants rely on are similarly distinguishable. As previously discussed above, in *Kurimski*, the Court found the advertisement at issue could not be material because the ad itself didn't actually publish a deceptive price. *Kurimski*, 570 F. Supp. 3d at 1245. Instead, the Court there

found that the plaintiff consumer made an "unreasonable assumption" "based on what [the] signs *don't* say." *Id.* (emphasis added).

Nor does *Ray v. Spirit Airlines, Inc.*, support the Defendants' position that it is "implausible . . . that consumers could be materially deceived by online advertised prices where consumers are made aware of the total price . . . before completing their purchase." (Defs.' Mot. at 19 (citing *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1341 (S.D. Fla. 2015) (Scola, J.), *aff'd*, 836 F.3d 1340 (11th Cir. 2016)).) First, although this Court, in *Ray*, found the defendant airline's pricing scheme did not amount to a violation of the Racketeer Influenced and Corrupt Organizations Act, it also noted that the practice may have nonetheless involved a "deceptive and unfair business practice." *Id.* at 1344. Additionally, the consumer's claim in *Ray* centered on an airline's deceiving customers into thinking an added fee was an official government tax. In short, whether the plaintiff's purchasing decision had been materially influenced by the advertisement of a deceptively low price had nothing to do with the Court's determination that the plaintiff had failed to allege a RICO claim.

Finally, the several resort-fee cases the Defendants rely on are also unavailing. In these cases, either the initial advertisement at issue disclosed that an additional amount may be added to the published rate; the allegedly deceptive rate and the rate with the added fees were published together, on the same webpage or website; or there was no distinct advertisement luring customers to the defendant hotel websites with deceptively low prices. *See Washington v. Hyatt Hotels Corp.*, 1:19-CV-04724, 2020 WL 3058118, at *1 (N.D. Ill. June 9, 2020) (rate was advertised as the "*minimum starting price*" and the plaintiffs did not complain of a separately advertised deceptively low price that lured them to the defendant hotel's website); *Gustavson v. Oxford Hotels & Resorts, LLC*, 20-CV-04357, 2021 WL 3801731, at *1 (N.D. Ill. Aug. 26, 2021) (no outside deceptive advertisement identified and the plaintiff hotel guest complained only that part of the daily rate he was charged included a resort fee that he was not previously aware was part of the total cost of the room); *Charbonnet v. Omni Hotels & Resorts*, 20-CV-01777-CAB-DEB, 2020 WL 7385828, at *2 (S.D. Cal. Dec. 16, 2020) (the initial ad published the daily rate with the resort fee disclosed right below the price without the fee, just in slightly smaller font, thus disclosing the total price to the consumer "before they even click 'Reserve' to take the first step toward booking a room"); *Harris v. Las Vegas Sands L.L.C.*, CV 12-10858 DMG FFMX, 2013 WL 5291142, at *1 (C.D. Cal. Aug. 16, 2013) (the plaintiff did not complain of a separate ad that lured him to the hotel's website and the allegedly deceptive price and the disclosure of the resort fee all appeared within the same website).

In sum, the Court finds the Defendants have improperly framed their materiality analysis, focusing only on the consumers' ultimate decisions to go through with their purchases of the Defendants lenses, without any consideration of the separate deceptive advertisement that got them there. Importantly, "materiality focuses on whether the false or misleading statement is likely to make a difference to purchasers." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 (1st Cir. 2002). New Vision's complaint focuses primarily on the allegedly false or misleading statements in the initial advertisements, not the Defendants' inclusion of "processing fees" once consumers navigate to their online platforms. In short, the Defendants' immateriality argument misses the mark by focusing on the wrong part of New Vision's claim.

### D. The Defendants fail to convince that the Complaint does not allege an injury sufficient to establish New Vision's standing.

Finally, the Defendants argue that New Vision's allegations of injury are conclusory and devoid of any factual support. While the Court agrees with the Defendants that a subset of New Vision's allegations are certainly conclusory, New Vision has nonetheless alleged enough factual support, in addition to its formulaic recitations of harm, that dismissal is not warranted.

The final element of a false-advertising claim under the Lanham Act requires a plaintiff to adequately plead that it "has been—or is likely to be—injured as a result of the false advertising." *Hickson*, 357 F.3d at 1260–61. Additionally, under the United States Supreme Court's decision in *Lexmark Intern., Inc. v. Static Control Components, Inc.*, a plaintiff must also establish standing under Section 43(a), which requires factual allegations of (1) "an injury to a commercial interest in reputation or sales," (2) that was "proximately caused by violations of the statute." 572 U.S. 118, 132 (2014). "A plaintiff sufficiently pleads injury under the Lanham Act if it plausibly alleges any 'economic or reputational harm' caused by defendant's misrepresentations which led consumers to 'withhold trade from the plaintiff.'" *TocMail Inc. v. Microsoft Corp.*, 20-60416-CIV, 2021 WL 5084182, at *4 (S.D. Fla. July 16, 2021) (Cannon, J.) (quoting *Lexmark*, 572 U.S. at 133).

While the Defendants point to a number of allegations in the complaint that are indeed best characterized as formulaic or conclusory claims of harm, these aren't the only pertinent injury-related allegations. For instance, New Vision describes in some detail what it labels "a typical scenario" of how it loses sales as a result of the Defendants' advertisements. (Compl. ¶ 114.) In that "typical scenario," one of New Vision's patients asks for a price for a particular product, such as the "1-Day Acuvue Moist lenses." (*Id.*) New Vision then

describes how that customer compares New Vision's price to the Defendants' ads that populate upon a Google search. (*Id.*) Since the Defendants advertise their lenses for "half the price" that New Vision says it charges, the customer "complains that Plaintiff's store is 'overcharging' and 'too expensive.'" (*Id.*) Despite New Vision's staff's attempts to explain Defendants' pricing scheme, "[c]onsumers leave the store without purchasing contacts" and end up "believing that Plaintiff's prices are not competitive across the board." (*Id.*) New Vision also alleges that other customers see the low prices the Defendants advertise before coming to New Vision's locations and New Vision never even has a chance to explain the Defendants' pricing scheme. (*Id.*) Because of this, complains New Vision, some customers end up assuming New Vision not only overcharges for its contact lenses but for all its products. (*Id.*)

As an initial matter, the Court disagrees with the Defendants that the "typical scenario" New Vision describes amounts to nothing more than a hypothetical thought exercise of how New Vision speculates it might lose a sale. (Defs.' Mot. at 21–22 (portraying New Vision's allegations as describing only how "a patient *might* ask about the price") (emphasis added).) Construing New Vision's allegations in the light most favorable to New Vision, however, the Court infers that New Vision is attesting that it is aware of actual sales it has lost in the manner it describes as a "typical scenario." While factual allegations presented as a "typical scenario" might leave those allegations open to interpretation, one reasonable interpretation is that New Vision knows of multiple such instances of losing sales in precisely this way. Further, elsewhere in the complaint, New Vision alleges, without qualification, that consumers who view the Defendants' ads, to compare prices, end up "decid[ing] to leave the Plaintiff's stores without purchasing contacts," believing "that they can get a significantly better price by purchasing from Defendants." (*E.g.*, Compl. ¶ 30.) Ultimately, these allegations are concrete enough to rise above the speculative level the Defendants complain about: although the Defendants' view of the allegations might be one way to interpret them, it is not the only way and it is certainly not in a way that is favorable to New Vision.

Next, the Defendants complain that New Vision "nowhere identifies the brands of contact lenses it sells" and that the complaint "does not contain a single affirmative allegation that Plaintiff sells any of those brands." (Defs.' Mot. at 22.) The Court disagrees. For example, New Vision describes Optimax's Google ads for a "90-pack of 1 Day Acuvue Moist Daily contact lenses" and then says that "honest advertisers like Plaintiff and class members advertise the true price they charge for these *same contacts*, which is substantially higher." (Compl. ¶ 38 (emphasis added); *see also id.* ¶¶ 56 (similar allegations regarding Lens.com and its ads for a 90-pack of DAILIES AquaComfort Plus

contact lenses); 73 (same for Web Eye Care and Biofinity 6 Pack contact lenses); 92 (same for Contact Lens King and Air Optix Night & Day Aqua 6 Pack). Moreover, New Vision specifically alleges it sells "1-Day Acuvue Moist lenses" which it says all the Defendants also sell and advertise. (*Id.* ¶ 114; *see also id.* ¶ 27 (stating that all the Defendants sell "1-Day Acuvue Moist").) While New Vision's pleading is by no means a model of clarity, the Court does not find it unreasonable to interpret its allegations to mean that New Vision, among the group of referenced "honest advertisers," also sells the identified contact lenses and that New Vision and the Defendants are therefore in direct competition.

The Defendants also criticize what they describe as New Vision's failure "to allege the *price at which it sells any contact lenses.*" (Defs.' Mot. at 23 (emphasis in original).) While the Court once again finds New Vision's standing allegations far from perfect, it finds the allegations are nonetheless enough to get the complaint past the Defendants' motion dismiss. New Vision repeatedly describes the Defendants' ultimate prices as "about the same as the prices honest retailers such as Plaintiff advertise," which is in fact the same as "the true market price." (Compl. ¶ 4.) And after describing itself as being a member of a group of "honest contact lens retailers" (*id.* ¶ 1), New Vision also alleges that the "Defendants' prices are the same (not more) than those of honest retailers" (*id.* ¶ 6). While the Court agrees New Vision's allegations are somewhat vague, the Court cannot say, as the Defendants insist, that New Vision has failed "to plead any facts as to its own advertising, brands, and prices." (Defs.' Mot. at 23 (cleaned up).)

In sum, the Court finds New Vision has managed to plead just enough to nudge its standing allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 4. Conclusion

As set forth above, the Court **denies** the Defendants' motion to dismiss (**ECF No. 56**). Accordingly, the Court **lifts** the previously imposed stay of discovery (Order Staying Case, ECF No. 63). Further, the Court orders the Defendants to file their answers to the complaint on or before **May 26, 2023**. Finally, as set forth in the Court's stay order, the parties must file an amended joint discovery plan and conference report on or before **May 24, 2023**.

**Done and ordered** in Miami, Florida, on May 17, 2023.

                                                                                                       _____
                                                                                                       Robert N. Scola, Jr.
                                                                                                       United States District Judge